No. 2250.

ANTONIO H. PEREZ *v.* ALBINO CANALES.

1. STATE SCHOOL LAND.—When a "view and appraisement" of State school lands in an organized county was made by the county surveyor under the act of 1879, which were regularly returned, adopted and approved by the commissioners court, reported to the commissioner of the General Land Office, and by him approved, prior to the passage of the act of 1881, and payment was made on one twentieth of the appraised value, and when such view, appraisement, return, report and approval, conformed to the provisions of the act of 1879, such "view and appraisement" having been continually recognized and acted on by the state officers, they were sufficient to support applications for the purchase of the land made after the act of 1881 took effect.

2. SAME.—Though the law requires that the purchaser shall send up his obligation or promissory note for the balance of the appraised value of the land so soon as the application has been received by the surveyor, it does not provide that a failure to do so shall work a forfeiture of the rights acquired by the application to purchase, and the payment of one twentieth cash payment.

3. SAME.—It was the manifest purpose of the legislature to give to an application to purchase school land, and the payment of one twentieth of the appraised value, the effect of securing to the purchaser subject to forfeiture only upon failure to pay interest annually, and upon failure to pay the principal within twenty years.

APPEAL from Nueces.    Tried below before the Hon. J. C. Russell.

Suit in trespass to try title, brought by appellee, for two sec-

tions of common school land situate each in the counties of Nueces and Duval. Plaintiff, in his pleadings, described the two sections claimed by metes and bounds; recited the law under which he made said applications; view and appraisement of the same under oath, by the county surveyor of Nueces county; return of the same to the commissioner's court of said county, and its approval of the appraisement thereof, as pasture land, at one dollar per acre; preparation of tabulated report by said court, embracing the sections, and forwarding of copies of the same to the general land office, State Treasurer, and the county surveyor of Nueces county; approval of the report by the Commissioner of the General Land Office, and notification to the surveyor April 1, 1880, that the lands should be offered for sale. He fully described his applications to purchase, of March 15, 1882; alleged they were received and recorded by the surveyor; that they were immediately forwarded by him to the treasurer of the State, with one twentieth part of the appraised value thereof; that the treasurer forwarded same to Commissioner of the General Land Office, who filed them in his office April 6, 1882, and sent plaintiff certificates of the same, and that the two sections of land were duly noted on the books of the surveyor of Nueces county as sold to plaintiff. He also alleged payments of interest to date, giving amounts and dates of receipts; also, that he caused to be forwarded and filed with the treasurer of the State of Texas his two several obligations, each in sum of six hundred and eight dollars, payable to Governor of State, with interest, etc., and which were received and registered by W. C. Walsh, Commissioner of the General Land Office, and thereafter received and filed in the office of the treasurer of the State; that, since April 8, 1882, he has ever been, and now is, entitled to exclusive possession of said two sections of land by virtue of his said purchase from the State.

He alleged that defendant, with full notice of the claims of plaintiff, willfully and knowingly contriving to defraud him, induced John J. Dix, surveyor of Duval county, to become his agent in violation of law, and, more than three months after plaintiff had filed his applications, defendant caused to be entered with said Dix, surveyor of Duval county, applications for the land, signed Antonio H. Perez, by John J. Dix, agent; that defendant knew plaintiff was paying for the land in yearly installments, but, to defraud plaintiff, he, through the unlawful agency of Dix, paid in full for the lands, and procured

patents therefor August 9, 1882, and thereafter made unlawful entry.

The trial court (a jury being waived) found the law and the facts to be with plaintiff, and rendered judgment accordingly.

*McCampbell & Givens,* for appellant.

*Welch & Givens,* for appellee.

ACKER, JUDGE. Notwithstanding the numerous assignments of error, all of which are insisted upon by appellant, we are able to discover in this record only two questions of any materiality, whatever, and they are:

1. Are the "view and appraisement" of State school lands in an organized county made by the county surveyor under the act of 1879 (General Laws special session of the Sixteenth Legislature, page 23), which "view and appraisement" were regularly returned, adopted and approved, by the commissioners court, reported to the Commissioner of the General Land Office, and by him approved prior to the passage of the act of 1881 (General Laws regular session of the Seventeenth Legislature, page 119), sufficient, together with the payment of one twentieth of the appraised value of the lands, to support applications for the purchase of such lands made after the act of 1881 took effect. Such "view and appraisement," and their return, report and approval conforming in all respects to the requirements of the act of 1879, and such applications to purchase conforming to the requirements of the act of 1881, said "view and appraisement" having been continuously recognized and acted upon by the State offices before and since the passage of the act of 1881.

2. If such "view and appraisement," together with their return, adoption, report, approval and continuous recognition by the State officials are sufficient to support such applications for purchase, does the purchaser forfeit his claims to lands so purchased, by his failure to send up his "obligations or promissory notes" for the balance of the appraised value of the lands "so soon as the applications have been received by the surveyor?"

The act of 1879 made no provision for the "view and appraisement" of State school lands in unorganized counties; fixed the minimum value of all State school lands at one dollar per acre, authorizing sales to be made on ten annual payments, de-

ferred payments to bear interest at ten per cent. The act of 1881, amendatory of the act of 1879, provides for the "view and appraisement" of land in unorganized counties by district surveyors, as well as for the "view and appraisement" of lands in organized counties by county surveyors; fixes the minimum value of lands having water on, or contiguous to them, at two dollars per acre, and one dollar per acre for other school lands; authorizies sales to be made on twenty annual payments, and reduces the interest on deferred payments to eight per cent. Both acts make substantially the same provisions for "view and appraisement," and the act of 1881 provides for supplemental appraisement whenever the Commissioner of the General Land Office shall deem a revision of the "view and appraisement" necessary, but it does not require reappraisement of lands that had been appraised in conformity with the requirements of the act of 1879. As to whether the "view and appraisement" are made in conformity with law, both acts make the Commissioner of the General Land Office the judge, and there is no provision for appeal from his decision. Where that officer has approved such "view and appraisement," and continuously recognized and acted upon them in the sale of school lands, such approval, continuous recognition and action, must be held conclusive of their validity in all controversies between individuals, where rights are dependent upon that question. The surveys being situated about equally in Nueces and Duval counties, in the absence of directions from the Commissioner of the General Land Office, the county surveyor of either county might lawfully receive applications to purchase, and appellee having made his applications to the surveyor of Nueces county in conformity to the requirements of law, prior to the applications by appellant to the surveyor of Duval county, his title was superior to that of appellant, unless his rights thus acquired had been forfeited. The other question appears to us to have been settled by this court on the former appeal in this case. (65 Texas, 294.) It is there said: "Had the notes been executed and delivered to the proper officer at too late a date to entitle Canales to the benefit of his purchases they would certainly not have received and kept the money which he paid them as interest on the notes. The very fact that they recognized these payments as due the State, and received and receipted for them, and registered the obligations under which they were paid, shows that they recognized the purchase as valid, and the obligations as duly exe-

Opinion of the court.

cuted." It is provided in the act that the purchaser shall send up his obligation or promissory note "for the balance of the appraised value of the land so soon as the application has been received by the surveyor," but the law does not provide that a failure to do so shall work a forfeiture of the rights acquired by the application to purchase and the payment of the one-twentieth cash payment.

It seems to have been the intention of the Legislature to give to the application to purchase and the payment of one-twentieth of the appraised value, the effect of securing the land to the purchaser, subject to forfeiture only upon failure to pay interest annually, and upon failure to pay the principal within twenty years.

Section eight of the law contains the following provision: "That any payment of principal may be deferred for one or more years, except the first one-twentieth, but all payments of both principal and interest must be paid inside of twenty years, and all interest must be paid annually." Canales had paid the interest upon the purchase money annually when due, though he did not execute and send up his obligations to be registered in the general land office until two years and nine months after his applications to purchase and payment of one-twentieth of the appraised value were made, and after this suit was brought, but his obligation when sent up was received and registered in the general land office, and filed with the State Treasurer, and we think the delay in forwarding the obligations could not now affect his rights acquired by his applications to purchase and payment of one-twentieth of the appraised value of the land.

It satisfactorily appears that Perez knew that Canales had made application to purchase the land three months before his application was made to the surveyor of Duval county; and it clearly appears that the Commissioner of the General Land Office issued patents to Perez through inadvertance, and we think the court did not err in so finding.

In the view we hold of the law of this case, other questions presented are immaterial, and we are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Opinion adopted February 7, 1888.